2007 UT App 238

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph Ward BERNARDS, Defendant and Appellant.**

**No. 20050574–CA.**

Court of Appeals of Utah.

July 6, 2007.

Delano S. Findlay and Jeffrey M. Gallup, Murray, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and DAVIS.

OPINION

BENCH, Presiding Judge:

¶ 1 Defendant Joseph Ward Bernards appeals from his convictions on four counts of aggravated sexual abuse of a child, all first degree felonies. *See* Utah Code Ann. § 76–

5–404.1 (1999). In this case, the trial court did not err by denying Defendant's request for a bill of particulars because the Amended Information, including the probable cause statement, sufficiently apprised Defendant of the nature and cause of the charges against him. Further, the trial court did not abuse its discretion by excluding certain evidence and in denying Defendant's motion to continue because the court had a reasonable basis for its rulings. Accordingly, we affirm.

## BACKGROUND

¶ 2 On January 24, 2003, E.M. (the Victim), while at a friend's home, became unusually upset after Defendant, the Victim's stepfather, refused to allow her to spend the night at the friend's house. The Victim told her friend, "I hate him. I hate him. He's such a molester." The Victim then reluctantly revealed to her friend that Defendant had been sexually abusing her for more than two years. The abuse occurred on such a regular basis that it was "very hard for [the Victim] to remember specific details, specific dates[,] because a lot of the time it was every day."

¶ 3 A few days later, the Victim's mother (Mother) took the Victim to the Murray police station to report the abuse. After the Victim was interviewed by an officer, Mother then took her to the Children's Justice Center to file another report. Mother also subsequently obtained a protective order against Defendant.

¶ 4 The State initially charged Defendant with five counts of aggravated sexual abuse of a child, occurring sometime between September 2000 and January 23, 2003. Prosecutors provided Defendant with the Information, including the probable cause statement, outlining the charges against him. Defendant filed for a bill of particulars, asking that the State "set forth the dates, times, places and the precise activities alleged in the [I]nformation" so that Defendant could adequately prepare his alibi defense. Defendant also filed a motion to dismiss the charges, claiming that the Information was "so broadly constructed that it fail[ed] to give him notice of the specific crime with which he was charged." The trial court denied the motion to dismiss, but responded to Defendant's motion for a bill of particulars by requiring the State to amend the Information to allege more specific dates. The Amended Information alleged that Count I occurred sometime between September 1, 2000, and December 31, 2000;[1] that Count II occurred during the first part of 2002; that Count III occurred during the latter part of 2002; and that Counts IV and V occurred during the first part of 2003.

¶ 5 The probable cause statement, included with the Information and Amended Information, described the charged acts in detail and gave Defendant more specific information regarding dates than any other document he received. Defendant did not claim below, nor does he on appeal, that he was unaware of the probable cause statement's description of the events, including the dates. The State also furnished Defendant with video and cassette tapes containing interviews with the Victim and a transcript of the Children's Justice Center interview. We rely on the probable cause statement and the trial record in our recitation of the events that resulted in the charges against Defendant.

¶ 6 Count II took place during the first part of 2002 when Defendant and the Victim got into an argument. Defendant struck the Victim on the top of her head. She fell to the floor, hit her head on the kitchen tile, and became "really dizzy." Defendant then got on top of the Victim and proceeded to touch her chest over and under her shirt. The Victim kicked Defendant and told him "to get off of [her]." Defendant refused, asked whether she liked it, and pleaded, "please, let me do this."

¶ 7 Count III occurred in December 2002, after the Victim took a bath in the master bathroom and attempted to leave the bathroom wrapped in just a towel. Defendant stopped her and pushed her onto a bed in the adjoining room. He touched the Victim's chest and penetrated her vagina with his finger.

¶ 8 Count IV occurred on January 18, 2003. The Victim was playing a computer

---

1. The jury did not convict Defendant on Count I    so we will not address it further.

game in the family room. Defendant walked up behind the Victim and tried to touch her chest. The Victim moved her chair to knock his arm away. Defendant took her by the arm, led her into the master bedroom, and pushed her onto the bed. He touched her breasts and pulled down her pants while restraining her hands. Defendant begged the Victim, "please let me do this. Please don't fight. Just let me do this." He tried to pull off the Victim's underwear and he forced himself against her and began "[m]oving against [her], grinding." He continued to ask the Victim if it felt good and pleaded with her to let him continue. The Victim threatened to call the police, fought to get away, pulled his hair, scratched his head, and tried to push him off. Later that evening, the Victim went into the living room to watch television. Defendant told the Victim to sit on his lap, and then began a grinding motion. The Victim was eventually able to get away.

¶ 9 Finally, Count V took place on January 23, 2003, while the Victim was reading on her bed. Defendant came into her room and apologized for an argument that took place earlier that day. He got on the Victim's bed and began touching her chest, over and under her clothing, and began pushing himself against her. The Victim kicked and scratched Defendant, trying to make him stop, but Defendant ignored her.

¶ 10 The trial court, in a pretrial ruling, refused to admit evidence regarding the divorce proceedings Mother initiated after separating from Defendant. The trial court also excluded any evidence regarding previous allegations of sexual abuse that took place among Mother's extended family, despite Defendant's claim that Mother got the idea to frame Defendant from these earlier occurrences. The pretrial ruling permitted Defendant to question Mother about allegations that Defendant had raped her, as well as about inconsistencies in Mother's statements in obtaining the protective order and in making reports to various agencies.[2]

¶ 11 The evening before trial, Defendant filed a motion to continue, alleging that he needed more time to review video tapes that had come into his possession nine days earli-

er and other documents provided by the State. On the morning of trial, the court heard Defendant's motion and denied it, ruling that a review of the evidence in question would not warrant a continuance.

¶ 12 The jury found Defendant guilty on Counts II, III, IV, and V. Defendant now appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 13 Defendant appeals the trial court's denial of his request for a bill of particulars, claiming that the Information was unconstitutionally vague in stating the dates and times of the charged offenses. "We review a trial court's denial of a request for a bill of particulars for an abuse of discretion." *State v. Gulbransen*, 2005 UT 7, ¶ 26, 106 P.3d 734.

¶ 14 Defendant also claims that the trial court erred by excluding evidence relating to certain conduct of Mother as irrelevant and by denying Defendant's motion for a continuance. We review a trial court's relevancy determinations and its decision to grant or deny a continuance under an abuse of discretion standard. *See State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194 (outlining the standard of review for relevancy determinations); *State v. Begishe*, 937 P.2d 527, 530 (Utah Ct.App.1997) (explaining the standard of review for a trial court's grant or denial of a motion to continue).

## ANALYSIS

### I. Adequacy of Notice

¶ 15 Defendant argues that the trial court improperly denied his request for a bill of particulars, claiming that the Information provided by the State was constitutionally deficient in providing him with adequate notice of the charges. "The right to adequate notice in the Utah Constitution requires the prosecution to state the charge with sufficient specificity to protect the defendant from multiple prosecutions for the same crime and to give notice sufficient for the one charged to prepare a defense." *State v. Wil-*

---

2. At trial, Defendant chose not to present any evidence on these two issues.

*cox*, 808 P.2d 1028, 1032 (Utah 1991); *see also* Utah Const. art. I, § 12. "When an indictment or information ... does not provide the notice guaranteed by [A]rticle I, [S]ection 12 [of the Utah Constitution], the accused may request a bill of particulars under rule 4(e)" of the Utah Rules of Criminal Procedure. *State v. Bell*, 770 P.2d 100, 104 (Utah 1988). A defendant is entitled to a bill of particulars "only when the information or indictment is constitutionally deficient by reason of its failure to inform of the nature and cause of the offense charged." *State v. Allen*, 839 P.2d 291, 298 (Utah 1992).

¶ 16 The Utah Supreme Court has held that the notice requirement is "designed to give those charged sufficient notice to prepare a defense," and has "defined the particularity requirement as the best information the prosecution has, and whatever information the prosecutor has that may be useful in helping to fix a date, time or place of the alleged offenses." *Gulbransen*, 2005 UT 7 at ¶ 27 (quotations and citation omitted). " 'As long as a defendant is sufficiently apprised of the State's evidence upon which the charge is based so defendant can prepare to meet that case, the constitutional requirement is fulfilled.' " *State v. Taylor*, 2005 UT 40, ¶ 9, 116 P.3d 360 (quoting *Wilcox*, 808 P.2d at 1032 n. 1). A defendant need only be "fully apprised of the State's [knowledge] regarding the time, place, and date of the crimes, [and] any lack of factual specificity goes not to the constitutional adequacy of the notice, but to the credibility of the State's case." *Wilcox*, 808 P.2d at 1033.

¶ 17 Here, Defendant contends that the State did not fulfill its notice requirement because the Information did not include dates of the charged offenses with adequate specificity. Defendant, however, did receive adequate notice through the probable cause statement. The probable cause statement, an identical copy of which accompanied the Information and Amended Information, should be considered as part of the notice given Defendant. *See Allen*, 839 P.2d at 298; *Bell*, 770 P.2d at 104. Although the probable cause statement gave a broad range of dates for Counts I and II, it narrowed Count III down to "during December 2002," and as-

signed specific dates to Counts IV and V. The probable cause statement also provided detailed facts associated with each charged offense. In addition, the State provided Defendant with video and cassette tapes containing interviews with the Victim, and a transcript of the interview at the Children's Justice Center.

¶ 18 Defendant essentially claims that the Victim's lack of pinpoint specificity should preclude conviction. Defendant, however, has not demonstrated that the State withheld or attempted to withhold any information it had regarding the dates of the charged offenses. Furthermore, any lack of specificity as to some of the counts affects only the credibility or sufficiency of the State's evidence, *see Wilcox*, 808 P.2d at 1033, which Defendant has not challenged on appeal. We conclude that the probable cause statement, together with the Amended Information, was sufficient to apprise Defendant of the State's evidence upon which the charges were based so that he could prepare an adequate defense. Therefore, the trial court's denial of Defendant's request for a bill of particulars was not in error.

## II. Exclusion of Evidence

¶ 19 Defendant claims that the trial court abused its discretion by excluding certain evidence regarding Mother's conduct during the subsequent divorce. "Evidence which is not relevant is not admissible." Utah R. Evid. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. "Generally, we will not find [an] abuse of discretion unless, given the applicable facts and law, the trial court's decision is unreasonable." *State v. Menzies*, 845 P.2d 220, 224 (Utah 1992).

¶ 20 Here, Defendant fails to show that the trial court's ruling on the relevancy of the excluded evidence was unreasonable. Contrary to Defendant's assertions, the trial court did admit some evidence that was relevant to both his criminal trial and the divorce

proceedings.[3] The record reflects that the trial court only prevented Defendant from eliciting testimony about events that occurred subsequent to the allegations of abuse that had no relationship to the truthfulness of the criminal allegations. The trial court reasonably ruled that such post-allegation conduct did not make the veracity of the allegations more or less probable.

¶ 21 Defendant has failed to demonstrate on appeal that the trial court "changed its mind" by preventing his attempts to show that Mother's statements in obtaining the protective order were inconsistent with others she made to various government agencies. Defendant fails to cite to the record where the trial court altered its pretrial evidentiary ruling and excluded the inconsistent statement evidence. Further, our independent search of the record reveals that Defendant made no attempts to prove that Mother's statements were inconsistent. We therefore do not disturb the challenged evidentiary rulings.

### III. Denial of Motion to Continue

 ¶ 22 Defendant also claims that the trial court's denial of his motion to continue was an abuse of discretion. Defendant claims that the denial prevented him from sufficiently reviewing evidence that he had been trying to obtain for some time, but had been unable to procure until ten days before trial. Given that the motion to continue was filed late, that Defendant had the evidence in his possession for nine days prior to filing the motion, and that the evidence pertinent to Defendant's defense was not as voluminous as Defendant alleged, the trial court reasonably denied Defendant's motion. The trial court's ruling was therefore not an abuse of discretion.

### CONCLUSION

¶ 23 The Amended Information and accompanying probable cause statement provided Defendant with adequate specificity regarding the dates and times the charged offenses took place. Any deficiency therein could

have affected the credibility of the evidence, but did not affect the constitutionality of the notice given Defendant. We conclude that the trial court did not abuse its discretion by excluding evidence relating to the divorce between Defendant and Mother because Defendant fails to demonstrate that the trial court's evidentiary rulings were unreasonable. Finally, the trial court's denial of Defendant's motion to continue was not an abuse of discretion.

¶ 24 For the foregoing reasons, we affirm.

¶ 25 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and JAMES Z. DAVIS, Judge.

---

**3.** The trial court allowed testimony from a mutual friend of Defendant and Mother that tended to, at least indirectly, support Defendant's theory that Mother was the mastermind behind the allegations of abuse and that the allegations were fabricated.